# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| HASSEL ALBERT COE, | ) |
| | ) |
|                 Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 7:13-CV-64 |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|                 Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Hassel Albert Coe ("Coe") filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Coe alleges that the Administrative Law Judge ("ALJ") erred by failing to properly account for his non-exertional impairments and by failing to reconcile the jobs listed by the vocational expert with Coe's limited educational level.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed all issues and the case is now ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, and the applicable law. I conclude that the ALJ's decision is supported by substantial evidence. As such, I **RECOMMEND DENYING** Coe's Motion for Summary Judgment (Dkt. No. 12), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 14.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is hereby substituted for Michael J. Astrue as the defendant in this suit.

1

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to determining whether substantial evidence exists to support the Commissioner's conclusion that Coe failed to demonstrate that he was disabled under the Act.[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"),

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

Coe was born on November 14, 1964 (Administrative Record, hereinafter "R." at 35), and is considered a younger person under the Act as of his alleged onset date. R. 21; 20 C.F.R. § 404.1563(c). Coe filed for DIB on August 4, 2009, claiming that his disability began on March 27, 2009 (R. 11) due to back injuries, arthritis, degenerative disc disease, bad knees and hands, and depression/anxiety. R. 35, 176. Coe later amended his alleged onset date to July 1, 2010. R. 33, 152.

The state agency denied Coe's application at the initial and reconsideration levels of administrative review. R. 59–63, 67–69. On August 12, 2011, ALJ William B. Russell held a hearing to consider Coe's disability claim. R. 27–34. Coe could not attend the hearing due to incarceration (R. 29), but he was represented by an attorney at the hearing, which included testimony from a vocational expert. R. 27–34.

On August 24, 2011, the ALJ entered his decision denying Coe's claims. R. 11–22. The ALJ found that Coe suffered from the severe impairments of degenerative joint disease of the lumbar spine status-post diskectomy, obesity, hypertension, psoriatic arthritis involving his hands, wrists, shoulders and knees, right plantar fasciitis, depression and anxiety. R. 13. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14. The ALJ further found that Coe retained the residual functional capacity ("RFC") to perform a range of sedentary work with multiple exertional and non-exertional limitations. Relevant to the issues in this case, the ALJ found that

3

Coe is limited to simple, repetitive tasks involving no contact with the public. R. 15. The ALJ determined that Coe could not return to his past relevant work as a dock worker, extrusion operator,[3] or production worker (R. 21), but that Coe could work at jobs that exist in significant numbers in the national economy such as ticket checker, telephone quotation clerk, or general office clerk. R. 22. Thus, the ALJ concluded that Coe was not disabled. R. 22. On December 18, 2012, the Appeals Council denied Coe's request for review (R. 1–3), and this appeal followed.

## ANALYSIS

### Non-Exertional Limitations

Coe argues that the ALJ erred in this case by failing to fully develop the evidence and account for his non-exertional impairments; specifically, his limitations with social functioning. The ALJ found that Coe's depression and anxiety would limit him to simple, repetitive tasks with no public contact. R. 19. Coe acknowledges that the record contains minimal evidence relating to his depression and anxiety, or any other mental impairments. Indeed, the only opinion in the record relating to Coe's mental capacity was rendered by licensed clinical social worker Dwight Miller, a non-acceptable medical source, over six months prior to Coe's alleged disability onset date. R. 274–81. However, Coe claims that Mr. Miller's opinion, together with Coe's report that he was laid off from his employment in 2009 due to chronic tardiness, establishes that Coe should be restricted from interacting with co-workers, in addition to the ALJ's restriction against contact with the public.

On December 8, 2009, William Humphries, M.D., performed a consultative examination of Coe. R. 303–08. Dr. Humphries noted that Coe was alert, pleasant and cooperative. R. 304.

---

[3] Coe lists his prior employment as "excrusion operator" for a plastics factory. R. 188. At the administrative hearing, the ALJ and vocational expert determined that Coe was referring to being an extrusion operator, which is a plastics machine operator. R. 29–30.

4

Coe was also oriented, with intelligible speech; his thought, idea and content were within normal limits; his memory was intact, and his intelligence was within normal range. R. 304.

On January 26, 2009, licensed clinical social worker Dwight Miller at Mount Rogers Community Services Board (Mount Rogers) conducted an initial assessment of Coe for complaints of social problems, isolation, withdrawal, and occupational/work problems. R. 274–81. Mr. Miller noted that Coe had been laid off from his employment in March 2009 due to chronic tardiness, and had no history of mental health treatment. R. 274. Coe also reported that he did not like to be around his friends and preferred to be alone. R. 274. Mr. Miller diagnosed Coe with depressive disorder and chronic back problems, and assessed a current GAF score of 60.[4] R. 281. Mr. Miller assessed Coe with mild impairments in his ability to maintain his personal hygiene/self-care; moderate impairments in his ability to prepare his own meals, manage finances, shop independently, manage impulsivity, and accept his mental illness; marked impairments in his ability to do housekeeping and laundry; and severe impairments in his ability to interact appropriately in social situations, develop/maintain a social support network and be accepted socially by others. R. 277. He recommended that Coe attend six sessions of individual counseling. R. 281–82.

Coe attended three counseling sessions with qualified mental health case manager Judy Fiebig at Mount Rogers. R. 283–84, 662–63, 665. Ms. Fiebig noted that Coe was irritated and sad during his sessions, and appeared to be grieving over his loss of income, job and status in the community. R. 660, 665. Ms. Fiebig found that Coe had impaired concentration, but his

---

[4] The Global Assessment of Functioning is a numeric scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health illness." Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. Am. Psychiatric Ass'n 1994) ("DSM IV"). A score of 51–60 suggests moderate symptoms or difficulty in social or occupational functioning. Id.

5

appearance and behavior were unremarkable. R. 660, 662, 665. Coe scored in the serious range on a test for depression, but also reported to Ms. Fiebig that his depression was situational rather than the result of a chemical imbalance. R. 660, 665. Coe did not attend his follow up appointments, and his case was closed on August 17, 2010, due to noncompliance. R. 668.

In April 2011, Coe was treated at Wythe Medical Associates for chronic low back pain and anxiety. Coe was taking Celexa at the time, but complained of sexual side effects. He was alert and oriented, with a flat affect. R. 684. Coe was taken off of Celexa; however, in July 2011, Coe's doctors placed him back on Celexa, noting that he was irritable without it. R. 686. Coe sought no other treatment related to his mental conditions.

As Coe acknowledges, the record contains scant evidence of non-exertional impairments arising from his depression and anxiety. The ALJ considered Mr. Miller's report, Coe's history of depression, and his subsequent counseling treatment at Mount Rogers, which was ultimately terminated due to non-compliance. R. 19, 651–68. The ALJ also considered the consultative examination by Dr. Humphries, noting Coe's normal mental examination, and Coe's mental health treatment at Wythe Medical Associates, where no complains of depression or anxiety were noted until April 2011. R. 19, 303–08, 682. The ALJ also noted Coe's activities of daily living, which included going to church on a regular basis, spending time with others and talking to his children. R. 15. Based upon the record as a whole, the ALJ found that Coe's depression and anxiety were severe impairments, and out of an abundance of caution, limited Coe to unskilled work with no public contact. R. 13, 19.

Coe claims that the ALJ erred by not further preventing him from having contact with co-workers. Coe provides no legal support for this assertion, aside from his statement that his mental impairments "likely would limit him to more than no public contact." Pl. Br. Summ. J. p.

6

7. Coe's argument is nothing more than an invitation to re-weigh the evidence and make a de novo determination of the proper RFC in this matter, which I am not permitted to do under the regulations. Coe does not argue that the ALJ failed to consider relevant evidence, or misapplied the law. That is, Coe does not point to any specific evidence the ALJ failed to consider which might have changed the outcome. See Reid v. Commissioner, 2014 WL 2958800, at *4 (4th Cir. July 2, 2014). Coe simply argues that, based upon the facts in the record, the ALJ should have also restricted Coe's interaction with co-workers in the RFC. The issue before this Court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence. So long as this standard—defined as more than a mere scintilla but perhaps somewhat less than a preponderance—is met, I cannot recommend reversing the ALJ. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

There is substantial evidence in this case to support the ALJ's conclusion that Coe suffered from severe impairments of depression and anxiety. R. 19. The ALJ accounted for Coe's mental health issues by limiting his RFC to simple, repetitive tasks with no interaction with the public. Accordingly, I find that the ALJ properly evaluated the evidence related to Coe's mental impairments and other non-exertional limitations and accounted for those impairments in his RFC.

**Representative Jobs**

Coe also argues that the ALJ erred by finding the representative jobs identified by the vocational expert to be consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). Specifically, Coe argues that the occupations listed by the

vocational expert, as described in the DOT, are not appropriate for someone with his limited education.

Coe completed the seventh grade and can speak, understand, read and write English. R. 175, 186. He previously worked as a dock worker (unskilled), extrusion operator (semi-skilled), and production worker (unskilled). R. 29–30. Coe's prior employment involved unloading trailers, maintaining a freight manifest, separating items to put in different trailers, and operating a forklift. R. 177. Coe reported that his prior work required technical knowledge and skills, as well as writing and completing reports. R. 177. Coe also reported to his counselor, Ms. Fiebig, that although he did not have much "academic type education" he "caught on easily how to do jobs and he was promoted for his efforts." R. 283.

At the administrative hearing, the ALJ asked the vocational expert to determine the number of jobs available for an individual with Coe's vocational background, who has a seventh grade education and is limited to a range of sedentary work consistent with that set forth in the RFC. R. 31. The vocational expert testified that such an individual could work as a ticket checker (DOT 219.587-100), telephone quotation clerk (DOT 237.367-046)[5] and general office clerk (DOT 249.587-018). R. 31.

The Commissioner bears the burden at step five to show the existence of a significant number of jobs in the national economy that a claimant can perform given his RFC. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). Under the regulations, the Commissioner may consider "services of vocational experts or vocational specialists, *or* other resources such as the Dictionary of Occupational Titles." 20 C.F.R. § 404.1560(b)(2)

---

[5] The vocational expert later testified that a telephone quotation clerk would generally require contact with the public, and for this reason, the Government concedes that Coe is not qualified to work as a telephone quotation clerk. R. 32; Gov't Br. Summ. J. p. 11. The ALJ's mistaken inclusion of telephone quotation clerk is harmless error because Coe can perform the duties of other jobs identified by the vocational expert. See Harris v. Astrue, Civ. Action No. 2:12-cv-45, 2013 WL 1187151, at *5 (N.D.W. Va. Mar. 21, 2013).

8

(emphasis added).  Thus, the ALJ may refer to either the testimony of vocational experts or the listings in the Dictionary of Occupational Titles in making the assessment as to whether a significant number of jobs exist in the national economy that Coe can perform.  Pryor v. Astrue, 650 F. Supp. 2d 493, 498 (W.D. Va. 2009).

However, Social Security Ruling ("SSR")[6] 00-4p provides that an ALJ may not rely on alternate work roles provided by a vocational expert if there is a discrepancy between the vocational expert's characterization of those alternate jobs and the characterization listed in the DOT in terms of exertional level, skill level, or transferability of skills.  SSR 00-4p, see Fisher v. Barnhart, 181 F. App'x 359, 365 (4th Cir. 2006) ("Social Security Ruling 00–4p clarifies 20 C.F.R. § 404.1566, which states, without more, that ALJs will consider both the Dictionary of Occupational Titles and vocational expert testimony to determine whether a Social Security claimant can find work suited to his residual functional capacity.")

Here, Coe argues that the jobs identified by the vocational expert, as defined by the DOT, are not appropriate for someone with a seventh grade education.  Coe does not specify how the DOT job descriptions conflict with the vocational expert's testimony, aside from stating that the DOT description of ticket checker requires someone with math and other intellectual skills that Coe does not possess, and that "according to the Bureau of Labor Statistics, general office clerks 'usually need a high school diploma or General Educational Development (GED) credential.'" Pl. Br. Summ. J. p. 7 (citing Bureau of Labor Statistics, U.S. Department of Labor, Occupational Outlook Handbook, 2012-13 Edition, General Officer Clerks, at http://www.bls.gov/ooh/office-and-administrative-support/general-office-clerks.htm).

---

[6] Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law. Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

9

When determining whether there are jobs that Coe can perform in the national economy, the ALJ must consider the record as a whole, not only Coe's seventh grade education but also his work history, and determine if Coe is able to perform a particular job. See Walker v. Bowen, 889 F. 2d 47, 50 (4th Cir. 1989). The ALJ consulted with a vocational expert to translate Coe's testimony, his education and his work history into the DOT levels. The ALJ provided the vocational expert with a hypothetical that included Coe's seventh grade educational level, as well as his past work history. Based upon the ALJ's hypothetical, the vocational expert determined that Coe could perform the jobs of ticket checker and general office clerk. The ALJ accepted the vocational expert's testimony and determined that the RFC and jobs identified by the vocational expert were justified by the record.

"Testimony of a vocational expert constitutes substantial evidence for purposes of judicial review where his or her opinion is based upon a consideration of all the evidence of record and is in response to a proper hypothetical question which fairly sets out all of a claimant's impairments." Bowers v. Astrue, Civ. Action No. 1:08cv43, 2010 WL 582787, at *7 (W.D. Va. Feb. 17, 2010) (citing Walker, 889 F.2d at 50). Here, the ALJ properly relied upon the testimony of a vocational expert, who was given proper and complete information with regard to Coe's age, education, relevant work history and residual functional capacity. Thus, I find no error in the ALJ's determination that there exist substantial jobs in the national economy that Coe can perform.[7]

## RECOMMENDED DISPOSITION

---

[7] Coe's brief in support of summary judgment also alleges disability due to a combination of impairments. Pl. Br. Summ. J. p. 8. Coe stated at the hearing before this Court that he was not pursuing that line of argument. However, having reviewed the record in full, I find that the ALJ properly considered the combined effects of Coe's various impairments, both physical and mental, when arriving at his RFC.

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** plaintiff's motion for summary judgment, **GRANTING** summary judgment to the defendant, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: July 7, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

11

Case 7:13-cv-00064-MFU-RSB   Document 20   Filed 07/07/14   Page 11 of 11   Pageid#: 769